ELLIS, Judge.
This suit was instituted on October 18, 1961 in an effort to cancel a certain gravel lease affecting a tract containing 56 acres of land more or less. Plaintiff sought an injunction restraining the defendant from continuing gravel operations on the tract in question. In addition to this relief, plaintiff filed a rule to show cause why lessee should not vacate the leased premises.
Counsel for defendant filed exceptions of res adjudicata and of no right and no cause of action. Reserving all rights under these exceptions, an answer was also filed by defendant’s counsel.
Evidence was taken on the hearing on the rules filed by plaintiff as well as upon the exceptions filed by defendant on November 14, 1961. The exceptions of res adjudicata and of no right and no cause of action were overruled. Apparently, plaintiff’s demand for a preliminary injunction was denied, and an order to vacate was also refused. The trial court ordered the case set down for a trial on the merits.
At that point, the record, as then constituted, was submitted to the court along with briefs from both counsel in lieu of submitting further evidence upon a formal trial on the merits. Judgment was rendered for the plaintiff on March 16, 1962. From this judgment decreeing the lease to be at an end and ordering defendant to vacate the premises, the defendant has perfected a suspensive appeal.
On appeal, counsel for defendant reurges his exception of res adjudicata. This court is not favored with a copy of the pleadings in this earlier suit, but has only the judgment denying the application for the preliminary injunction before it. However, since the first suit was filed during the term of the lease, it is improbable that the same issues were involved in the first suit as are presented in the case at bar, which was filed after the term of the lease had elapsed. Since the pleadings in the earlier suit are not in evidence, the exception of res adjudicata cannot be considered now.
It is also found that defendant’s exceptions of no right and of no cause of action were properly overruled. The lease sued upon was surely not so crystal clear in its language as to deny plaintiff his day in court. In fact, the opposite result is reached infra. The determination of the respective rights of the plaintiff and defendant under the lease has been properly made only after a trial on the merits.
The pertinent portions of the lease in question are as follows:
“The term of this lease shall be for a period of one year, and Lessee shall have the option of annually renewing said lease for a period of four years, provided that Lessee notifies Lessor in writing 30 days prior to the expiration of said lease each year that he renews *355 this lease that he is exercising his option to renew it, and further provided that if at any time Lessee is removing sand, gravel or clay gravel in paying quantities that this lease shall automatically continue as long as the production is had in paying quantities * * *»
“Lessee hereby guarantees to Lessor a minimum royalty payment of $100.00 per year, and in the event there is no production a minimum of $100.00 a year rental for this lease.”
The provision of the lease relied upon strongly by the defendant is as follows:
“If at any time Lessee is removing * * gravel in paying quantities * * * this lease shall automatically continue as long as the production is had in paying quantities.”
However, this provision is in the same paragraph as the provisions relating to exercise of the option to renew the lease in each of the four years succeeding the first year of the lease. Therefore, reading these provisions together, it is concluded that the agreement that “production * * * in paying quantities” would automatically extend the lease was merely a way provided by which lessee could renew the lease annually without the necessity and formality of sending a written notice to the lessor. There is no reason given why this provision should be held to extend the maximum term of the lease which is limited in the contract to five years.
It was admitted that the lease in question was prepared and furnished by the defendant, Fadie Jenkins. Therefore, the doctrine relied upon by the plaintiff is found to be apposite in interpreting the provisions of the lease in question as follows:
“In case of ambiguity or doubt in the interpretation of a contract then it should be more favorably construed in favor of plaintiff and against the defendant because the defendant was the author of all the stipulations thereof and dictated its terms. (See James Monroe [Moore] v. The Stuyvesant Insurance Company of New York [La. App.], 98 So.2d 911, and Albritton v. Fireman’s Fund Insurance Company, [224 La. 522], 70 So.2d 111). (See also Civil Code Article 1958).”
The lessor and lessee continued to treat the property as leased after the term of the written lease expired. Therefore, it is found that Articles 1817 and 2686 et seq. of the LSA-Civil Code control the term of the present lease. Applying these articles to the facts presented herein, it is found that the written lease was recon-ducted on a month to month basis. This reconducted lease is a new lease and not a continuation of the old one. A discussion of the nature of reconduction of leases under the pertinent articles of the LSA-Civil Code of Louisiana is found in an article published in 1 La.Law Review, 443 from which we quote at page 446:
“In not one of the Louisiana decisions which discuss the nature of re-conduction is mention made of another article of our code which should be of great assistance in reaching a solution of this problem. The reference is to Article 1817 which reads as follows:
‘Silence and inaction are also, under some circumstances, the means of showing an assent that creates an obligation; if; after the termination of a lease, the lessee continue in possession, and the lessor be inactive and silent, a complete mutual obligation for continuing of the lease, is created by the act of occupancy of the tenant on the one side, and the inaction and silence of the lessor on the other.’ (Italics supplied).
“By citing the reconduction of a lease as the classic example of the tacit creation of a valid conventional obligation this article completely refutes the view that reconduction merely effects *356 a ‘continuance’' of the original lease by operation of law. Declaring that a ‘complete mutual obligation * * * is created by the act of occupancy on the one side, and the inaction and silence of the lessor on the other,’ this provisions renders it impossible to escape the conclusion that the reconducted lease is the result of a new convention.”,
This reconducted lease was not governed by the provisions for termination included in the original lease but rather by the provisions of LSA-R.S. 13:4918 on August 25, 1960, this being the date upon which counsel for defendant admitted defendant received the first written notice to vacate. This statute, which has now been replaced by Article 4701 of the LSA-Code of Civil Procedure, reads as follows, towit:
“When any person having leased any house, store or other buildings, or landed estate, for a term of one or more years, or by the month or otherwise, either verbally or otherwise, shall desire to obtain possession of the leased premises upon the termination of the lease, either by limitation or by non-payment of the rent when due, or any other breach of the lease, he shall demand and require in writing his tenant to remove from and leave the same, allowing him five calendar days from the day such notice is delivered.
“If the owner or his agent shall desire to obtain the possession of the leased premises for any other reason or cause, such as, for the purpose of leasing the premises to another tenant or otherwise, he shall give to the tenant a notice in writing to vacate, ten days before the expiration of the month, if the same be a monthly lease, or thirty days before the expiration of the lease, if the lease be in writing and for a term of one or more years or otherwise, other than by the month.”
We find that the notice to vacate was timely and terminated the reconducted lease. The fact that plaintiff received rental payments after the notice to vacate raises no presumption of an implied renewal of the lease. Delmar Realty Co. v. Alberstadt, 1913, 10 Orleans App. 148.
The lease was terminated in August of 1960 as a result of the notice sent by plaintiff’s counsel, however, plaintiff should have a right to claim any amounts due for royalties arising from the unauthorized operation of the gravel lease by the defendant after the termination of the re-conducted lease. This right is hereby reserved to the plaintiff.
Counsel for defendant has raised several other arguments including estoppel and “production in paying quantities.” These are all inapposite because they relate to the operation of the reconducted lease under the provisions of the original lease. This is not a proper treatment of the leasé in question under the codal articles on re-conduction discussed above.
For the above reasons the judgment of the District Court is hereby affirmed, all costs of these proceedings including the cost of appeal to be paid by defendant.
Affirmed.