LEAR, Judge.
This is a suit for an injunction. In March, 1960, Mr. H. H. Dinkins, Sr. entered into a predial lease with defendants, whereby eighty-one acres (superficial measure) was let “for agricultural purposes” to defendant-lessees “for and in consideration of the payment to the Lessor of one-fifth (1/5) of all cane harvested and delivered to the mill or mills in the years 1961, 1962, 1963 and 1964 * *
The lease did not dedicate any specified portion or acreage of the whole to be planted in cane, though the tenor of the instrument shows that it was the clear understanding of the parties that the primary purpose of the lease was to develop and cultivate this land for the production of sugar cane.[1]
The lease by its terms expired midnight, December 31, 1964. A provision was made for an optional renewal by written notice not later than six months before the termination date of the original lease. Defendants admittedly did not exercise their option.
During the month of January, 1965 the Lessees continued undisturbed in their possession of some, if not all, of the property. In fact, it was not until May, 1965 that Lessees received a letter signed “Lussan M. Bercegeay, Agent for the Estate of H. H. Dinkins, Sr.”, notifying defendants that “effective the end of the current crop year this crop lease is hereby revoked and rescinded.” [2]
Sometime in June, a Mr. Theodule L. Landry sent his son onto the land in question to begin preparation of some of the acreage for cane planting. He did this by virtue of a lease he supposedly had obtained from the petitioners,[3] but his son was warned off the premises by threat of legal action by defendant.
Upon learning of this petitioners, alleging ownership of the property in question by inheritance from the original Lessor, their father, applied to the Sixteenth Judicial District Court for the Parish of St. Mary for a temporary restraining order *498 and preliminary and permanent injunction against defendants.[4]
The Lower Court issued ex parte a temporary restraining order, restraining, prohibiting and enjoining defendants from “in-terferring (sic) with the plowing and preparation by petitioners through their Lessee, Theodule J. Landry, of the necessary portion of the property hereinabove described for the planting of the 1966 sugar cane crop thereof(Emphasis supplied)
Thus, it will be seen that the effective meaning of the order was not to evict the defendants from the entire tract of eighty-one acres, nor was it to restore Lessors to possession of their entire property. The only way in which this order can be read is that petitioners were enabled to enter, either personally or through the agency of their designate, upon an undisturbed possession of a vague and undetermined portion of eighty-one acres.
This order was, as is usual, coupled with a rule nisi ordering defendants to show cause why a preliminary injunction should not issue in the same form and substance as the temporary restraining order.
After the trial of the rule and the entering of reasons, both oral and written, the intent of the learned trial Judge becomes clear,[5] but inasmuch as it relates to the nature of the cane crop itself, a digression becomes necessary for clarity.
Sugar cane is harvested either from an initial planting (called seed or plant cane) or from secondary growth from stubble cane (either first year stubble, second year stubble, or rarely, third year stubble).
Consequently, a farmer usually plants only a portion of his entire acreage with “plant cane” and leaves his remaining acreage in “stubble”.
However, when the cane crop comes to an end and the parties decide not to renew, it appears that the custom is for the landowner to pay the farmer for the stubble left in his field or give the farmer the right to work, harvest and sell the cane grown from the stubble.
Though this custom was not proved in the record by probative evidence, the Trial Judge recognized it in his oral reasons given at the close of the trial on the rule nisi when he said, “The written lease expired on December 31, 1964. The lease was reconducted, however, because the Lessors permitted the tenants to do fall plowing and planting of cane in 1964, so they have the right in 1965 to cultivate, harvest and sell their sugar canc off of this property and they will have the right to return on this property in 1966 for the purpose of cultivating and harvesting the first year stubble cane or whatever stubble they may have on the place which is fit for cultivation or sale on the market.” He further recognized this usage in his written reasons as follows: “Movers had to permit defendants to cultivate and harvest the plant and first year stubble in 1965 and that is the only purpose for which they have been allowed upon the premises. But movers have the right to go upon the premises at this time to plow and prepare the land for the fall planting of sugar cane for the year 1966. And they can and must do so without interfering with defendants in the cultivation and harvesting of their 1965 *499 crops and cultivation and harvesting of their stubble in 1966.” [6]
There can be no doubt that a tacit reconduction of the lease at issue took place by virtue of the fact that Lessees remained in undisturbed possession, without adverse notice or expression of intention by petitioners, from January 1, 1965 to May, 1966. The Trial Court so holds and we agree. This reconduction guarantees defendants possession of the leased premises for an additional year.[7]
However, to define and delineate the terms of the reconduction brings to light an interesting point which plagued the scholars of our law for some time. Simply put, the question is this: Does a tacit reconduction of a lease extend the original lease on all of its terms and conditions or does it create an entirely new covenant between the parties ?
The strict language of LSA-C.C. 2688 seems to favor an affirmative answer to the first part of the question, and, indeed, the Courts of Louisiana have so held on occasion.
However, we feel that the opinion of the late Judge Robert Ellis in Sharpe v. Jenkins, 150 So.2d 353 (La.App. First Circuit, 1963), has finally resolved this matter by holding that a reconducted lease is a new lease, not an extended lease.[8]
The distinction is of the utmost importance here, because if there had merely been an extension of the original lease, defendants would have been clearly entitled to undisturbed possession of the entire eighty-one acres for the calender year 1965.
However, since it is a new lease for a year, presumed to have been entered into by the tacit agreement of the parties,[9] it is necessary for the Court to define the property encompassed by the tacit agreement.
As shown above, the Trial Court held that defendants remained in continuing possession only of that acreage upon which there was stubble cane. He, therefore, concluded that the reconducted lease extended only to the boundaries of that stubble and defendants became strangers to the remainder of the eighty-one acres. It naturally follows that defendants would be enjoined from interfering with petitioners’ use and enjoyment of that remainder.
However, if defendants did, in fact, enjoy possession and use of the entire tract continuously during the month of January, 1965, then the law must presume that the tacit agreement between the parties ^ also encompassed the entire.tract and it would follow that the restraining order and injunction were improvidently issued.
And this is the case as we find it. ■1
Mr. Lawrence Willie Landry testified .that in January, 1965, he had about twenty acres in “plant” cane that he had planted in the fall of 1964, about five acres in first year stubble and about fifteen acres in second year stubble.
*500 He further testified that after the rainy season in January he started plowing up his third year stubble to prepare the ground for new planting in the fall of 1965. He stated that he worked on this “new ground” until he received Mr. Bercegeay’s letter about the middle of May, 1965.
This testimony was uncontradicted, though plaintiffs attempted to discredit it by the testimony of Mr. Theodule Landry, Jr. Mr. Landry testified that he went to the property in the latter part of June, 1965 to examine three fields (one field measuring 6.4 acres, one measuring 4.9 acres, and the other not identified as to acreage) and found these fields grown up in Johnson grass. He admitted on cross examination that he did not know how fast Johnson grass grew, nor could he tell whether or not defendants had plowed the land during the interim January-June, 1965. This is entirely consistent with Mr. Landry’s statement that he quit working the field when he received the May, 1965 letter.
Furthermore, Mr. Landry testified that some of the remaining land was planted to corn, and the only other land available for cane was “a little piece in the woods.”
Therefore, we think the evidence clearly shows that after the lease expired by its terms, the defendants continued to treat the land just as they had done the preceding five years, and that they actually were in continuous possession by maintaining their stubble crop, by preparing land for new cane and by putting some of the land into corn and other feed crops.[10]
This being the case, the reconducted lease encompassed all eighty-one acres and defendants were entitled to the uninterrupted and unimpeded enjoyment thereof during the calendar year 1965.
The issues presented to the Court by this record are limited in scope. They are: Should the injunction have issued? If not, should the defendants be allowed attorney’s fees for its dissolution? Under the reasoning above, it is clear that the injunction improperly issued and should be dissolved. It therefore follows that attorney’s fee should be allowed and we hereby assess same at $250.00.
Accordingly, the judgment of the Lower Court is: reversed and the writ of injunction is hereby recalled and rescinded and judgment is hereby rendered for defendants and against plaintiffs in the sum of $250.00 as reasonable attorney’s fees. Suit is dismissed to plaintiff’s prejudice and at their costs, reserving to defendants the right to bring suit for damages for the improper issuance of said writ.

. That the defendants were leasing and taking the entire eighty-one acres is shown, however, by the following recitation in the lease: “It is further understood that lands herein leased are to be dry cropped principally in sugar cane and about one third of the balance may be planted in crop or feed crops for use of Lessees; the balance to be planted in legumes or other soil building crops or to be fallow planted.”

. The validity and operativeness of Mr. Bereegeay’s agency is open to serious question, but is unimportant as relates to the' issue before the Court in the instant matter. (Emphasis ours.)

. The existence of this agreement was not proved, but is immaterial.

. Defendants answered the petition and later issued a call in warranty against the surviving spouse and usufructury of the original Lessor. However, this issue passed from the case when it was shown that the mother had donated her interest in the property, including usufruct, to petitioners.

. The Trial Judge announced that he was going to make the rule for a preliminary injunction absolute. At that time, the attorney for defendants requested that he enter the permanent injunction instead. This was obviously for the purpose of removing the necessity for another hearing. Counsel for plaintiffs agreed to this. The matter was then appealed to this Court.

. Furthermore, the letter of May, 1965 addressed to defendants by Mr. Ber-cegeay states: “A settlement between you and the estate for the balue of the stubble cane left by you on the leased premises will he made during the month of April, 1966, after the nature and condition of this cane can be determined.”

. Louisiana Statutes Annotated, Civil Code Article 2688. “If, after the lease of a predial estate has expired, the farmer should still continue to possess the same during one month without any step having been taken, either by the lessor or by a new lessee, to cause him to deliver up the possession of the estate, the former lease shall continue subject to the same clauses and conditions which it contained; but it shall continue only for the year next following the expiration of the lease.”

. See a well written comment on this problem in 1 Louisiana Law Review 439.

. LSA-C.C. 1817.

. See footnote #1 supra.