461 So.2d 1219 (1984)
Paul J. METZLER
v.
RISING T RACING STABLES and Robert Harvey.
Paul J. METZLER
v.
RISING T RACING STABLES and Robert Harvey.
RISING T STABLES, INC.
v.
Mr. & Mrs. Paul J. METZLER.
Nos. 83 CA 1363 to 83 CA 1365.
Court of Appeal of Louisiana, First Circuit.
December 28, 1984.
*1220 Paul Metzler, in pro. per.
William V. Courtney, Covington, for defendants, appellees in Nos. 83 CA 1363 and 83 CA 1364 and for plaintiffs-appellees in No. 83 CA 1365.
Before GROVER L. COVINGTON, C.J., and LOTTINGER and JOHN S. COVINGTON[*], JJ.
JOHN S. COVINGTON, Judge Pro Tem.
This litigation involves three consolidated suits relating to a predial lease of an eight acre horse farm in St. Tammany Parish. Paul J. Metzler (Metzler), owner-lessor, filed a petition for writ of injunction (Docket # CA-83-1363 of this Court) on August 24, 1981; a temporary restraining order was issued August 26, 1981 and a show cause hearing set for October 13, 1981 on the requested preliminary injunction. Rising T Racing Stables, Inc. (Rising T) and Robert Harvey (Harvey), defendants-lessees, *1221 on September 2, 1981, filed a petition for a concursus in the suit for injunction and deposited the rent for August and September, 1981, amounting to $1,110, into the Registry of the Court.
On September 16, 1981 Metzler filed a rule to evict tenant (Docket # CA 83 1364 of this Court). On October 9, 1981 Rising T and Harvey filed a peremptory exception to the rule, scheduled for October 13, 1981. Defendants in the eviction suit also filed an answer to rule to evict on October 12,1981.
On October 7, 1981, Rising T. and Harvey filed its own petition for injunction to prevent eviction until deposit returned in Metzler's initial suit for injunction and the rule to show cause was also scheduled for hearing on October 13, 1981.
On October 13, 1981 Rising T filed suit against Metzler for damages based on breach of contract; Metzler reconvened, also seeking damages for breach of contract. (Docket # CA 83 1365 of this Court).
Before the rule in CA 83 1363, Metzler's injunction suit, could be heard improvements made on the farm by Rising T were actually removed from the leased premises, thus the rule was dismissed. Before Metzler's rule to evict and Rising T's rule for injunction to prevent eviction (in CA 83 1364 and CA 83 1363 respectively) could be heard, Rising T vacated the leased premises on June 18, 1982.
On December 22, 1981 Judges John W. Greene and James Strain granted Metzler's motion for consolidation of the three separate law suits. The suits were tried before Judge Greene on two separate days, namely November 3, 1982 and January 5, 1983.
The trial judge took the matter under advisement and on April 28, 1983 he rendered detailed Reasons for Judgment. He concluded that the eviction suit was rendered moot by Rising T and Harvey having vacated the leased premises on June 18, 1982 and Metzler's suit seeking an injunction prohibiting the removal of improvements consisting of additions and structures had been dismissed on Metzler's motion without prejudice.
The court's Reasons for Judgment were addressed to the suit for breach of contract initiated by Rising T and Harvey and Metzler's reconventional demand, the Court stating "the issues in this suit [Docket # CA 83 1365] are still viable." Bracketed material supplied.
One judgment was rendered in the three consolidated cases and signed on May 12, 1983. The court granted judgment in favor of Rising T against Paul Metzler and Mary Ann Metzler in the amount of $28,231.33 in the main demand and granted judgment in favor of Paul Metzler and Mary Ann Metzler against Rising T and Robert Harvey jointly and in solido in the amount of $10,957.41 in their reconventional demand. The judgment further ordered that funds deposited by Rising T and Harvey into the Registry of the Court be released to Rising T and credited against the $28,231.33 awarded Rising T[1].
Metzler timely filed an application for new trial. It was denied and Metzler filed a timely application for suspensive appeal. Rising T and Harvey neither appealed the May 12, 1983 judgment nor answered Metzler's appeal.

JUDGMENT
Of the $28,321.33 awarded Rising T and Harvey, $24,655.33 represented loans to Metzler by Rising T and Harvey, $2,500 represented interest payments made to Metzler to pay interest on his Production Credit Association (PCA) second mortgage loan, and $1,056 represented the deposit posted with the real estate agency in connection with the Agreement to Purchase or Sell and withdrawn by Metzler with Rising *1222 T's and Harvey's permission. Of the $10,957.41 awarded Metzler, $85 was for labor costs expended in reconstructing a fence, $764 was for estimated cost of repairs to the dwelling house, $754.61 was to replace carpet, mirrors, and a stove broken or ruined, and $133.80 was for cleaning carpets and repairing the trash compactor. The Court did not allow anything for the dismantled and removed improvements consisting of a pole barn, wooden fences, and a horse walker placed on the leased premises by Rising T and Harvey. Rising T's demand to be reimbursed the costs of constructing a road and excavating a stock pond and cultivating raw acreage to make it pasture land was denied.
Court costs were assessed against plaintiffs and defendants equally.

FACTS
Testimony and documentary evidence established that Rising T made a formal offer on April 21, 1980 to purchase Metzler's eight acres and improvements on or before June 1, 1981 for $119,000 provided Rising T could secure a mortgage loan "at a rate of interest not to exceed 14% per annum, interest and principal payable over a period of not less than 25 years" and provided further that "purchaser will pay discount points not to exceed 2% percent of the mortgage approved for the purchase of subject property." The agreement to Purchase or Sell, accepted by Metzler on April 21, 1980 called for "occupancy/possession as leasee (sic) 5/1/80, as owner 6/1/81" and referred to "attached lease" on the same line of the Agreement to Purchase or Sell. The attached document was styled "Lease for Use with Agreement or Option to Purchase" and provided the term of the lease to be from May 1, 1980 through May 31, 1980[] the monthly rental of $500, payable in advance on the first of each month, was fixed for the duration of the lease. The Agreement to Purchase or Sell contained the handwritten stipulation that the purchaser "be allowed to make improvements to property." The lease provided that "any additions made to the property by the Lessee shall become the property of Lessor at the termination of this lease unless the property is purchased by the Lessee."
By letter dated May 15, 1981, Rising T and Harvey informed Metzler that "since I have been unable to obtain financing under the terms of the contract, the sale will not be possible" and that "I am agreeable to continue to lease this property" on the basis of a stated preference of "a month to month renewable lease."
Between May 15, 1981 and around the first of June, 1981 Metzler and Harvey met with Production Credit Association's (PCA) manager and an agreement was reached that if Metzler paid $5,000 to PCA every three months until the quarterly payments on the PCA second mortgage totaled $40,000 PCA would refrain from foreclosing. Harvey agreed to fund the quarterly payments of $5,000 each and continued to pay Metzler's interest payments on the PCA mortgage in addition to the monthly rental and insurance. Interest payments by Harvey totaled $2,500.

TRIAL COURT
The trial judge, after reciting the narrative of facts set out above observed in his Written Reasons for Judgment that:
"There is a dispute concerning the classification of these payments. The record establishes that these interest payments made by plaintiff [Rising T] were not intended to be added rent. These interest payments were made by plaintiff in an attempt to alleviate defendants' [Metzlers'] financial predicament and were intended by plaintiff to be applied to the purchase price." P. 4.
The Judge also found as a fact that Metzler admitted in his testimony that he owed Rising T and Harvey $24,675.33, *1223 loaned in anticipation of purchasing the subject property. The lower court also found as a fact that on August 24, 1981 Metzler notified Harvey to vacate the premises but the request was not honored so on November 5, 1981 Metzler informed Rising T and Mr. and Mrs. Harvey that the monthly rental would be raised to $1,000 per month effective December 1, 1981. After the August rental check was returned to Metzler with the notation "insufficient funds" Rising T and Harvey paid the rental into the Registry of the Court at the rate which had been paid through July 1, 1981, i.e., $500 plus $55 for insurance.
The fact finder then concluded:
"Testimony establishes that both Mr. Harvey and Mr. Metzler understood clearly that this lease, after termination of the primary period, would be on a month to month basis.... Accordingly, there was no reconduction of this predial lease.
"Therefore, this Court finds that Mr. Metzler had the authority to raise the rent to $1,000 per month effective December 1, 1981. Since Mr. Harvey and Rising T ... vacated the leased premises on June 18, 1982, the amount of rent owed by the plaintiffs must be calculated at $1,000 per month from December 1, 1981 through July 1, 1982. Plaintiffs must be given credit for the amounts paid into the Registry of the Court to be applied against that amount of rent owed." P. 6.

ASSIGNMENTS OF ERROR
Metzler, defendant-appellant, assigns as errors committed by the trial court its conclusions that: (1) the monthly rental for the period of December 1, 1981 through July 1, 1982 was $1,000 rather than $1,055 as defendant-appellant contends, (2) Metzler, who unsuccessfully sought an injunction prohibiting Rising T and Harvey from dismantling and removing improvements placed on the acreage with his permission, was not entitled to their value because the May 1, 1980 through May 31, 1981 lease, renewed on a month to month basis, authorized lessees' dismantling and removal before the termination of the lease; (3) interest payments made by Harvey to Metzler were loans rather than additional rental, and (4) Harvey was entitled to a return of the $1,056 deposit as a separate item of damages because that amount was included in the $24,675.33 the court found had been loaned to Metzler by Harvey.

ISSUES
1. Was the lease of the acreage reconducted for a term of an additional year?
2. Did Rising T and Harvey have the right to dismantle and remove the barn, fences, and horse walker installed on the acreage with the lessor's permission?

RECONDUCTION
The judge reasoned that the leased acreage was a farm and the lease was a predial lease governed by C.C. arts 2676 and 2688. Quoting from Ashton Realty Company v. Prowell, 165 La. 328, 115 So. 579 (1928) and relying further on Regan v. Carr, 343 So.2d 1125 (La.App. 3rd Cir.1977) and Eames v. Goodwin, 337 So.2d 909 (La. App. 3rd Cir.1976), and applying the principles stated in the codal authority and jurisprudence cited, he concluded "there was no reconduction of this predial lease." We hold that his analysis of the facts and his application of the legal principles applicable to those facts are amply supported by the record.
This court in 1963 clarified the confusion created by earlier case law by holding that a reconducted lease is a new lease, not an extended one, a distinction which is of the utmost importance here because if there had been merely an extension of the original lease, lessees would have been clearly entitled to undisturbed possession for the year commencing June 1, 1981 and ending May 31, 1982 (Sharpe v. Jenkins, 150 So.2d 353 [La.App. 1st Cir.1963]) without any increase in the $500 monthly rental for that year. Dinkins v. Broussard, 190 So.2d 496 (La.App. 1st Cir.1966); C.C. art. 2688.
The extra $55 per month which Metzler, the appellant, would have us *1224 award as additional rental for the period December 1, 1981 through July 1, 1982 is not supported by the record. From the inception of the lease, Rising T and Harvey verbally obligated themselves to pay Metzler an additional sum, first $40 per month and later $55 per month, so that Metzler could pay the insurance premium on the dwelling and appurtenant structures. A new lease, on a month to month basis, came into being on June 1, 1981; Metzler did not establish to the satisfaction of the trial court, nor does he convince us, that the new lease, only verbal, obligated Rising T and Harvey to continue paying the sum representing insurance premiums. Accordingly, Metzler's first assignment of error is without merit.

IMPROVEMENTS BY LESSEE
The district court denied Metzler's claim that he was entitled to the value of the pole barn, fences, and horse walker constructed on the acreage by Rising T and Harvey, reasoning that "there was no prohibition in the lease against plaintiffs demolishing any improvements they constructed on the leased premises" and "the evidence ... does not establish when these improvements were removed from the leased premises by plaintiffs". Because Metzler did not satisfy the legal requirement of proving that the enumerated "improvements which were constructed by plaintiffs were on the leased premises at the termination of this lease" the stipulation in the lease that "any additions made to the property by the Lessee shall become the property of the Lessor at the termination of this lease unless the property is purchased by the Lessee" never became operative. Therefore, Rising T and Harvey were the owners of the improvements and the law permitted them to remove their improvements before they vacated the leased premises of their own volition on June 18, 1981 unless removal of the improvements caused substantial damage to themselves or to the immovable to which they were attached. C.C. arts. 465, 466, 493, and 495; National Companies v. Bridgewater, 398 So.2d 29 (La.App. 4th Cir.1981); Simmons v. Board of Commissioners for the Port of New Orleans, 442 So.2d 836 (La.App. 4th Cir.1983); and Pendleton v. Shell Oil Co., 408 So.2d 1341, (La.1982).
In Pendleton, supra, the lease of plaintiff's land, contained a provision that improvements constructed by Shell "shall become Lessor's property at the termination of this lease." Reasoning that the termination of the old lease by mutual agreement and the entering into a new lease between the same parties continued in Shell the ownership of the old service station constructed by Shell during the term of the old lease, the Supreme Court concluded that "inasmuch as Shell owned the building with a right to make any alterations and without any prohibition against demolishing it, coupled with an unlimited right to use the property for any lawful purpose, we do not consider that Shell breached the lease by demolishing the old service station..." 408 So.2d 1341, 1343.
The predial lease between Metzler, owner-lessor, and Rising T and Harvey, lessees, terminated on May 31, 1981. A new lease, on a month to month basis, took the place of the lapsed lease. Pendleton, supra, Simmons, supra, and C.C. arts. 2726, 465, 466, 493, and 495 are the legal authority, taken in combination and with the original thirteen month written lease, for Rising T's and Harvey's having dismantled and removed the pole bar, fences, and horse walker. Accordingly, Metzler-appellant's second assignment of error is without merit.

INTEREST PAYMENTS
Our analysis of the record in this matter fails to disclose error in the holding that five monthly interest payments on Metzler's PCA second mortgage loan constituted a loan rather than additional rental. The record as a whole supports the trial court's finding on that point. Therefore, Metzler-appellant's third assignment of error is without merit.

SECURITY DEPOSIT
The district court did not award to Rising T and Harvey the $1,056 deposit, *1225 made in conjunction with the Agreement to Purchase or Sell, but once. The record does not support Metzler-appellant's argument that the deposit was awarded as an item of damages more than once.

FINDINGS OF FACT BY TRIAL COURT
Unless the trier of fact, whether trial judge or jury, is manifestly erroneous in its factual findings significant to the outcome of the suit, appellate courts should not disturb them. This principle is especially true when the trier of fact has had the opportunity to observe and evaluate the credibility of the witnesses as he did in this case. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978); Canter v. Koehring Company, 283 So.2d 716 (1973). We do not disturb the factual findings and conclusions of law because they clearly are not manifestly erroneous.
All costs of this appeal are cast against appellants Metzler.
AFFIRMED.
NOTES
[*] Judge John S. Covington of the 19th Judicial District Court has been duly elected to this court; that term begins on January 1, 1985. In the interim, the Supreme Court has appointed him to this court pro tempore.
[1] Although the Reasons for Judgment refer to plural plaintiffs and defendants, the judgment refers to only one plaintiff, Rising T. Rising T and Harvey were made "defendants-in-reconvention" by appellant. As Harvey was not a defendant in the main demand, this designation is erroneous. However, the third party defendant, Harvey, has made no objection and filed an answer to the "reconventional demand." Under our doctrine of fact pleading and considering the subsequent actions of Harvey, he is properly treated as a defendant.
[] The date May 31, 1980 is designated on the face of the lease as the termination date; the documentary evidence and testimony supports the lower court's finding that the lease term was May 1, 1980 through May 31, 1981.