215 So.2d 530 (1968)
Brady SMITH, Jr.
v.
CHEMICAL CONSTRUCTION CORPORATION.
No. 7440.
Court of Appeal of Louisiana, First Circuit.
November 12, 1968.
Taylor, Porter, Brooks, Fuller & Phillips, Baton Rouge, for appellant.
Cashio & Cashio, Baton Rouge, for appellee.
Before LOTTINGER, ELLIS, and BAILES, JJ.
ELLIS, Judge.
This is a suit for damages suffered by plaintiff Brady Smith, Jr., because of the alleged total loss of a tractor trailer rig leased by him to defendant Chemical Construction Corporation. From a judgment in favor of plaintiff, defendant has appealed.
The record reveals that two months prior to the accident, plaintiff purchased the tractor and trailer for $3,000.00. The lease agreement with defendant provided for an hourly rental for the rig of $12.50, for which sum plaintiff furnished the rig and a driver and assumed the cost of fuel, maintenance and liability insurance.
Shortly before the accident, a boiler tube section weighing 29,140 pounds and measuring 12' 10" in height, 12'6" in length, and 7'1" in width was loaded onto the bed of the trailer. The section rested on two channel beams, which in turn rested transversely on two "I" beams sitting lengthwise on the trailer bed. One of the two "I" beams was damaged and it was necessary to provide additional support beneath the section in the form of timbers laid between and parallel to the "I" beams. The driver then secured the section to the trailer by means *531 of four chains, which held fast, even after the load toppled over. With the exception of chaining the load to the trailer, all aspects of loading were under the supervision of Lloyd Martin, foreman of the crew of boilermakers provided by defendant for the purpose of loading and unloading the section.
According to the testimony of plaintiff's witnesses, the section was leaning dangerously to the left when the loading was completed, which fact they communicated to Martin. Martin and defendant's other witnesses testified that the tube section was properly loaded.
In order to reach the unloading site, it was necessary to drive along a shell road a distance described as 75 to 300 feet by various witnesses, and then negotiate a left turn across a ditch which was bridged by a number of heavy timber mats. Plaintiff's witnesses testified that as soon as the truck began the turn, and its front wheels were on the mats, the leaning of the section became very pronounced. Martin ordered the truck to stop and summoned a crane to assist in getting the load across the ditch. However, before the crane could be attached, the section toppled over, allegedly twisting the chassis of the tractor and trailer beyond repair.
Defendant's witnesses testified that the section fell only because plaintiff's driver made too sharp a turn onto the mats.
It is clear that defendant's employees were in full control of all aspects of loading the equipment and specifying how and over what route it was to be transported. It is also apparent that the shell road itself was uneven, and that the mats were positioned lower than the general level of the road. Plaintiff's driver drove the truck as slowly as possible throughout, and had barely commenced his turn when he stopped with his front wheels on the mats.
The district judge found "that the defendant was negligent in the manner in which the equipment was turned upon an inadequate structure." By this we assume he meant that because of the uneven nature of the road and mats, and the size and awkward nature of the load, the rig could not be safely turned onto and driven across the mats even if properly loaded.
We are unable to say that he was manifestly erroneous in reaching his conclusion, or that he erred in finding that plaintiff's driver was not contributorily negligent.
In addition, we are of the opinion that Article 2317 of the Civil Code is applicable. That article provides that one is liable for damages caused by "things which we have in our custody." Custody in this article means supervision and control. See Washington v. T. Smith & Son, 68 So.2d 337, 346 (La.App.Orl.1953). As pointed out above, defendant's employees exercised full supervision and control over the unloading and transportation of the boiler tube section. Defendant is, therefore, liable for damages caused thereby.
Defendant points out, on the question of damages, that the only evidence relative to the value of the tractor and trailer is plaintiff's testimony as to the amount he paid for it two months before the accident. No expert testimony was adduced on this point, or to show that the rig was a total loss. Only plaintiff's testimony is in the record on the latter point. Plaintiff testified that he paid $3,000.00 for the rig and that he obtained only one bid of $150.00 for salvage value of the rig. The district judge allowed $3,000.00 damages, less $275.00 for salvage value and depreciation.
There is no testimony in the record to contradict what was said by plaintiff relative to the condition of the rig and its purchase price. Plaintiff testified that he had been in the trucking business, buying, selling, and operating trucks and heavy equipment for eight years. He also was the owner and operator of a business engaged in repair, renovation and sale of heavy equipment. Although he made no *532 claims to expertise, it is apparent that his testimony relative to both price and condition was entitled to be given some weight. In light of all the circumstances, we find that there is sufficient evidence in the record to support the conclusion reached by the district judge.
The judgment appealed from is affirmed, at defendant's cost.
Affirmed.