605 F.2d 934
 Wayne J. CHAMPAGNE, Plaintiff-Appellee,
v.
CHEVRON U. S. A., INC. (formerly Chevron Oil Co.), Defendant
Third-Party Plaintiff-Appellant,
v.
HERB'S WELDING, INC., et al., Third-Party Defendants-Appellees,
and
North-West Ins. Co., Intervenor-Appellee.
 No. 79-1017
 
 Summary Calendar.*
 United States Court of Appeals,
Fifth Circuit.
 Nov. 2, 1979.
 Lloyd C. Melancon, New Orleans, La., for defendant third-party plaintiff-appellant.
 Gothard J. Reck, Glen G. Magnuson, Jr., New Orleans, La., for Wayne J. Champagne.
 Adams & Reese, George V. Baus, New Orleans, La., for third-party defendants-appellees.
 Wiedemann & Fransen, Raul R. Bencomo, New Orleans, La., for Elkhart Brass Mfg. Co., Inc.
 Roger J. Larue, Jr., Metairie, La., for intervenor.
 Appeal from the United States District Court, Eastern District of Louisiana.
 Before GOLDBERG, RONEY and TJOFLAT, Circuit Judges.
 TJOFLAT, Circuit Judge:
 
 
 1
 On February 10, 1975, Wayne J. Champagne was injured while working on a fixed offshore drilling platform owned by Chevron U.S.A., Inc. (Chevron) and located along the Louisiana gulf coast. Champagne was an employee of Herb's Welding, Inc., which had been hired by Chevron to do some welding on the platform. It was Champagne's job to man a fire hose near the spot where the welding was taking place and to put out any fire that might start. The injury occurred while Champagne was testing the hose and nozzle, furnished by Chevron, to ensure that it would function properly. As he was shutting off the water flow, a nut within the nozzle came loose, and a sudden burst of water propelled him forcefully against a guard rail.
 
 
 2
 Champagne subsequently brought this diversity suit against Chevron and Elkhart Brass Mfg. Co. (Elkhart), the manufacturer of the nozzle, asserting various theories of recovery under the Jones Act, 46 U.S.C. § 688 (1976), general maritime law, and Louisiana tort law. In a third-party action Chevron sought full indemnity or contribution from Elkhart. On the eve of trial, Champagne settled with Elkhart for $20,000; the case proceeded to trial on Champagne's claim against Chevron and its third-party claim against Elkhart. The jury returned a $250,000 verdict against Chevron and on the other claim found, in response to the court's interrogatory, that Elkhart had not manufactured the nozzle defectively. Consequently, the court entered judgment for Elkhart on Chevron's third-party claim.
 
 
 3
 In this appeal Chevron raises three points, only one of which merits discussion. Chevron contends that the district court committed reversible error in charging the jury on the doctrine of strict liability. The case was tried under Louisiana law, without objection, and in instructing the jury on Chevron's standard of conduct the court said:
 
 
 4
 What rules apply to Mr. Champagne's claim against Chevron? It's a relatively brief instruction, and I ask you to listen quite carefully to it. The owner of an offshore oil well drilling or production platform, such as Chevron in this case, has the duty to keep the platform and the equipment which is attached to and forms part of the platform operations in good repair. The fire hose and the nozzle involved in this case are equipment attached to forming part of the operation and the platform and are covered by that instruction. So that Chevron has a duty to keep the platform and the appurtenances, the equipment, including the hoses and nozzles in a state of good repair. As a result of that, Chevron would ordinarily be liable to Mr. Champagne if you find that Mr. Champagne has proved by a preponderance of the evidence that he was injured as a result of a defective condition in the hose nozzle, whether the defect was due to a defect in the original design or in the manufacture of the nozzle, or through a neglect to repair it, unless you find that the one exception, which I will discuss with you in a minute, is involved.
 
 
 5
 And before I give you the exception, I call to your attention that Chevron is not excused from its liability to Mr. Champagne nor to anybody, either by ignorance of a defective condition, they don't know about it, or merely because the defect could not have easily been detected or discovered.
 
 
 6
 Chevron would be relieved of its liability if there is an injury resulting from a defective condition in this case only if the hose nozzle failed to function properly because of some improper handling or use of it by Mr. Champagne. Let me sum up what I have said to you. If you find that the plaintiff has proved by a preponderance of the evidence that he was injured as a result of a defect in or the failure of the hose nozzle, then plaintiff is entitled to recover unless you find that Chevron has proved by a preponderance of evidence that the nozzle failed to function properly because Mr. Champagne handled it improperly or used it improperly.
 
 
 7
 Supp. Record, vol. II, at 149-51.
 
 
 8
 Chevron insists that the instruction is contrary to article 2322 of the Louisiana Civil Code, which provides:
 
 
 9
 The owner of a building is answerable for the damage occasioned by its ruin, when this is caused by neglect to repair it, or when it is the result of a vice in its original construction.
 
 
 10
 La.Civ.Code Ann. art. 2322 (West 1979). The word "ruin," according to Chevron, means "fall" or "collapse" of a substantial part of the building. It reasons that the failure of the nozzle did not constitute "ruin;" therefore, it cannot be liable.
 
 
 11
 In Olsen v. Shell Oil Co., 574 F.2d 194 (5th Cir. 1978), this Court certified to the Louisiana Supreme Court a question as to the meaning of the word "ruin" in article 2322 in a case where injuries and death were caused by the explosion of a hot water heater on a drilling platform. See generally Olsen v. Shell Oil Co., 561 F.2d 1178 (5th Cir. 1977). That court's response was that the owner of a building has a non-delegable duty to keep his building and its appurtenances in repair so as to avoid injury to others and that the owner is strictly liable for injuries resulting from his failure to perform this duty. Olsen v. Shell Oil Co., 365 So.2d 1285, 1292 (La.1978). The court emphasized that the owner's liability under article 2322 "extends to damages resulting from defects in appurtenances such as window fans and water heaters." Id.
 
 
 12
 We consider the fire hose in this case to be no less an appurtenance than a window fan, a water heater, or electrical wiring. Id. at 1291. The jury instruction complained of is in conformance with the Louisiana Supreme Court's construction of the law, and, accordingly, the judgment of the district court must stand.
 
 
 13
 In post-verdict proceedings the district court reduced Champagne's recovery against Chevron by the amount of the $20,000 Elkhart settlement. In his brief, Champagne asks that the verdict against Chevron be given full effect because the jury found that Elkhart was not at fault. Champagne has not cross-appealed; therefore, we may not consider his claim of error.
 
 
 14
 AFFIRMED.
 
 
 
 *
 Fed.R.App.P. 34(a); 5th Cir.R. 18