**Howard L. WALKER, Plaintiff-Appellant,**

**v.**

**TENNECO OIL COMPANY,
Defendant-Appellee.**

No. 79–2189
**Summary Calendar.***

United States Court of Appeals,
Fifth Circuit.

April 25, 1980.

Rehearing Denied June 9, 1980.

---

* Fed.R.App.P. 34(a); 5th Cir. R. 18.

George A. Flournoy, Leonard Fuhrer, Alexandria, La., for plaintiff-appellant.

Edward J. Koehl, Jr., New Orleans, La., for defendant-appellee.

Before GEE, HENDERSON and HATCHETT, Circuit Judges.

PER CURIAM:

Howard Walker was injured on February 7, 1977, in an accident on a fixed offshore oil drilling platform located on the Outer Continental Shelf in the Gulf of Mexico, off the coast of Louisiana. Separate actions were instituted against appellee Tenneco Oil Company, the owner of the fixed platform, by appellant and Ray Mallory,[1] both of whom were employees of Hydraulic Workover, Inc. (HWI), an independent contractor that had contracted with Tenneco to perform workover operations on the platform. Tenneco filed third-party complaints in each action against HWI, seeking contractual indemnity. The actions were consolidated for trial. The third-party claims were severed from the main demands, which were tried before a jury.

Because of flowage problems with one of its wells, Tenneco found it necessary to obtain from HWI a "snubbing unit" and a four-man, specialized crew proficient in the operation of the unit and the type of work involved. The snubbing unit, a hydraulic jacking mechanism designed to allow lengths of pipe to be forced into and pulled out of a pressurized well, is portable and was secured to this well by eight bolts. The entire unit could be assembled or disassembled in approximately two hours. The snubbing unit had been used by HWI to service the wells at another platform earlier

---

1. Mallory did not appeal the final judgment and is not a party to this appeal.

in the week and had been on the platform in question for only two or three days before the accident.

HWI's four-man crew consisted of an operator (Bill Walker, appellant's brother) and three helpers, including appellant. On the morning of the accident, a Tenneco supervisor on another platform eighty miles to the west phoned Bill Walker to discuss a problem in connecting an HWI blowout preventer stack. Bill Walker was requested by Tenneco to go to the distant platform to oversee that operation. He did so, even though none of his helpers had ever worked on a crew with fewer than four members or where there was no operator. Appellant had never worked with any of the other crew members nor had he ever worked in the basket where the controls were located. In fact, he was the least experienced member of the crew.

At the time of the accident, appellant and Mallory were attempting to remove the traveling slips (two large, vice-like pieces of metal which clamp onto the pipe as it is pulled out of the well by the snubbing unit) from the jack assembly. The traveling slips rested on four bolts. Counterbalance cables, which extended through a pulley at the top of the gin pole, were tied to both sides of the slips. The control knobs on the cables were activated and set by either appellant or Mallory. There is no dispute that the controls were excessively set. The slips became cocked or jammed and appellant was shaking the cables in an attempt to loosen the slips and to get an even, balanced pull on them when they suddenly came free, flinging appellant through the air with a slingshot effect; he fell to the platform and suffered injuries to his feet and ankles. No other part of the unit fell or collapsed. At the time of the accident the counterbalance controls were in good working order and not defective.

No Tenneco employees were near the snubbing unit at the time of the accident. Appellant had never operated the snubbing unit and had limited experience with the counterbalance controls. Prior to the accident, Mallory had never removed the slips outside an operator's presence.

At the close of appellant's evidence, Tenneco moved for a directed verdict on the strict liability and negligence claims. The court granted the motion on the strict liability claim but submitted the negligence issue to the jury. The jury returned a verdict of no negligence on the part of Tenneco and the court entered a judgment dismissing appellant's action.

### Strict Liability

■ Walker contends that the district court erred in directing a verdict on the strict liability claim by misconstruing the Louisiana Supreme Court's decision in *Olsen v. Shell Oil Co.*, 365 So.2d 1285 (La.1978). A directed verdict is proper only· when, considering all the evidence and inferences therefrom in the light most favorable to the opposing party, the district court determines that a reasonable minded jury could not reach a contrary verdict. *Boeing Co. v. Shipman*, 411 F.2d 365, 374–75 (5th Cir. 1969) (en banc). *See also MacKenzie v. Chrysler Corp.*, 607 F.2d 1162, 1165 n. 4 (5th Cir. 1979).

■ Louisiana law governs this tort action brought under the Outer Continental Shelf Lands Act (OCSLA), 43 U.S.C. § 1333(a)(2). *Mott v. Odeco*, 577 F.2d 273, 275 n. 2 (5th Cir. 1978); *Olsen* at 1288 n. 2. Appellant seeks to impose strict liability upon Tenneco pursuant to La.Civ.Code art. 2322:

> The owner of a building is answerable for the damage occasioned by its ruin, when this is caused by neglect to repair it, or when it is the result of a vice in its original construction.

In *Olsen*, the Louisiana Supreme Court interpreted article 2322 to impose a non-delegable duty on an owner to keep his or her building and its appurtenances in repair in order to avoid injury to others, with the failure to comply resulting in the imposition of strict liability. *See* 365 So.2d at 1288–89, 1291; *Champagne v. Chevron U.S.A., Inc.*, 605 F.2d 934, 936 (5th Cir. 1979). To impose liability under article 2322, the following requirements must be met:

> (1) There must be a building; (2) the defendant must be its owner; . and (3)

there must be a "ruin" caused by a vice in construction or a neglect to repair, which occasions the damage sought to be recovered.

*Olsen* at 1289. There is no doubt that Tenneco's fixed drilling platform constitutes a "building" under the article. *Mott* at 275 n. 3; *Olsen* at 1290. Two questions remain: First, was the snubbing unit a necessary "appurtenant" structure to the "building" made "immovable" by attachment? *See Olsen* at 1291. Second, was the unit defectively manufactured or rendered unsafe by any act or omission by Tenneco? *See id.* at 1289.

Prior cases impose liability under article 2322 on the owner of a "building" for such "appurtenances" as a defective fire hose, water heater, elevator, window fan, or electrical wiring contained within the "building." *See Champagne* at 936; *Olsen* at 1291 n. 12. Most of these items share a common characteristic not found in the snubbing unit: they were, with some degree of permanence, an integral part of the building. However, a window fan is probably no more permanent than is this unit. Furthermore, most equipment on drilling platforms can be moved from one platform to another as the need for it arises. We thus hesitate to say with certainty that the snubbing unit is not an "appurtenant" structure under Louisiana law, since such a holding might have widespread ramifications on the Outer Continental Shelf.

Nevertheless, a directed verdict was proper under *Boeing Co. v. Shipman, supra,* because there was no evidence of a defect in the unit nor any proof of any negligent handling of the unit by Tenneco. On the contrary, undisputed evidence showed that either plaintiff or Mallory had set the counterbalance controls too high, causing the accident. Improper handling by either of them would absolve Tenneco of strict liability under art. 2322 and the *Olsen* doctrine. *See Champagne* at 936; *Olsen* at 1289, 1293–94 & n. 15.

### Jury Charge

Walker also asserts error in the court's failure to give his requested jury charges on negligence and multiple causation. The requested instructions were based on appellant's theory that Tenneco could be found negligent for removing the operator and leaving the snubbing unit in the hands of inexperienced helpers, whose secondary negligence precipitated the accident. The district court properly refused to give the specific instructions requested.

Under section 1333(a)(2) of the OCSLA, workers injured on the Outer Continental Shelf are provided any remedy available under state law so long as the remedy is not inconsistent with federal law. *Bourg v. Texaco Oil Co., Inc.,* 578 F.2d 1117, 1120 (5th Cir. 1978). In *Bourg,* the plaintiff asserted that Texaco was negligent under Louisiana law by failing to observe federal regulations even though the negligence of an employee of the independent contractor caused the injury. *Id.* This court rejected such an argument as being inconsistent with Congressional intent:

It is the plaintiff's position that because of these regulations, a platform owner who is otherwise free of negligence and who hires an experienced independent contractor and assigns to that contractor some rather routine work should be legally responsible for the negligent work methods utilized by that contractor. We feel that it would be error to so interpret these regulations absent a clear indication from Congress that this was their intent. Our reading of the legislative history of the Outer Continental Shelf Lands Act uncovers no such intent. Consequently, it would have been error for the trial judge to have so charged the jury.[5]

[5] Because we feel that the intent of Congress was not to hold a platform owner vicariously liable, it follows that any charge given to a jury under Louisiana negligence law regarding the legal duties created by these regulations would necessarily be consistent with the Congressional intent.

*Bourg* at 1121–22 (citation omitted). While appellant is not predicating the liability of Tenneco on the federal regulations at issue in *Bourg,* his theories of negligence liability and multiple causation are essentially those rejected by this court in *Bourg* as inconsist-

ent with Congressional intent. Furthermore, the court's charge fully explained plaintiff's negligence theory[2] and gave a correct charge on proximate cause.[3] The trial judge, in a conscientious effort to be totally fair, even gave supplemental instructions on proximate cause.[4]

Under these circumstances, we reject all of plaintiff's invitations to find error and AFFIRM the judgment below.

---

2. The charge reads:

> Now, the plaintiffs claim that the removal of Bill Walker from this platform at this time was an act of negligence because Tenneco in effect, committed this short-handed crew to perform a task which it was incompetent to perform, and that the accident resulted from their negligence in doing this.
>
> The first question that you will have to ask yourself in each instance in Mallory's case and in Walker's case is, was Tenneco Company negligent in causing the removal of Bill Walker from this platform at this time and leaving the three men on the platform to perform this work?
> The basic standard in the concept of negligence is a requirement that the defendant exercise that degree of care which we might reasonably expect from an ordinarily prudent person under the same or similar circumstances.

3 Trp. 36, 40

3. This language stated:

> Plaintiff must prove that by a preponderance of the evidence, and that's the second question that's going to be put to you, as to whether that negligence, assuming you find it occurred, was a proximate cause of the accident sustained by the plaintiff.

3 Trp. 44

4. The jury was told:

> I may have sloughed off a little on the definition of proximate cause, and I want to give it to you again. An injury or damage is proximately caused by an act or failure to act whenever it appears from the evidence in the case when the act or omission made a substantial bringing about or causing the injury or damage, and that the injury or damage was either a direct result or reasonable, probable consequence of the act or omission.

3 Trp. 104

* Fed.R.App.P. 34(a); 5th Cir. R. 18.