Hilmar C. STEELE

v.

HELMERICH & PAYNE INTERNATIONAL CO., et al.

Civ. A. No. 80–4369.

United States District Court,
E.D. Louisiana.

June 21, 1983.

B. Gerald Weeks, Alexandria, La., for plaintiff.

Lawrence Abbott, Jeanmarie Lococo, New Orleans, La., for defendants.

## ORDER AND REASONS

CHARLES SCHWARTZ, Jr., District Judge.

Plaintiff, Hilmar C. Steele, instituted suit against various defendants, including Helmerich & Payne Drilling Company, for injuries he allegedly sustained on or about November 5, 1979 while employed by Weatherford-Lamb, Inc. and while working on Helmerich & Payne's land rig No. 37. Helmerich & Payne filed a motion for summary judgment, seeking dismissal of plaintiff's claims against it. For the purpose of a determination on this motion, the plaintiff and mover stipulated to the following facts:

1. On November 5, 1979, the date of the plaintiff's accident, Helmerich & Payne International Drilling Company and its Drilling Rig Number 37 were working for Shell Oil Company pursuant to a drilling contract between them.

2. On November 5, 1979, Weatherford-Lamb, Inc., was working on Helmerich & Payne land Drilling Rig Number 37, pursuant to an agreement in effect between Shell Oil Company and Weatherford-Lamb.

3. On November 5, 1979, there was no contractual relationship between Helmerich & Payne International Drilling Company and Weatherford-Lamb, Inc.

4. On November 5, 1979, the plaintiff, Hilmar C. Steele, was employed by Weatherford-Lamb, Inc., as a derrickman or stabber on a casing crew.

5. On November 5, 1979, the Weatherford-Lamb casing crew on Helmerich & Payne Drilling Rig Number 37 were not employees of Helmerich & Payne International Drilling Company.

6. Weatherford-Lamb, Inc., is a rental service company in the business of furnishing casing crews and equipment for intermittent casing operations aboard drilling rigs.

7. On the night of November 4, 1979, that is, the night before the injury in suit occurred, Weatherford-Lamb, Inc., sent a casing crew of its employees, including the plaintiff, to the drill/well site for the first time to perform a specialized casing operation that was intended to take one (1) to two (2) days.

8. As a derrickman employed by Weatherford-Lamb, Inc., the plaintiff's duties included assisting in rigging the stabbing board in the derrick, approximately forty-seven (47) feet in the air, above the drill floor.

9. A stabbing board is a mechanical apparatus rigged to the derrick for the purpose of raising or lowering the stabber (i.e., one of the Weatherford-Lamb crewmembers), according to the height of the pipe being stabbed. At the time of the injury in suit, the stabbing board was approximately forty-seven (47) feet above the drill floor.

10. The stabbing board in question consisted of a single unit or mechanism, including a track upon which the board itself was to be raised or lowered during the casing operations.

11. On November 5, 1979, the plaintiff's crewpusher was Honore Muntz.

12. On November 5, 1979, Mr. Muntz was an employee of Weatherford-Lamb, Inc., and his job was to supervise a crew of five Weatherford-Lamb men, including the plaintiff, relative to the casing activities for which Weatherford-Lamb had been engaged by Shell Oil Company.

13. On November 5, 1979, Mr. Muntz was in complete charge of the operation of rigging the stabbing board, approximately forty-seven (47) feet above the drill floor, which was to be utilized by the Weatherford-Lamb crew in the casing activities.

14. Each and every piece of equipment to be utilized in the rigging of the stabbing board and the casing operations, including the stabbing board and its means of securement, was owned by Weatherford-Lamb, Inc.

15. The Weatherford-Lamb crew and equipment were ordered to Helmerich & Payne Rig Number 37 by a representative of Shell Oil Company whose instructions were received by a Weatherford-Lamb dispatcher.

16. The casing equipment which was to be utilized on the date of the plaintiff's accident, including the stabbing board and its means of securement, was dispatched by Weatherford-Lamb, Inc. to the rig site.

17. On November 5, 1979, Honore Muntz instructed the plaintiff and two other Weatherford-Lamb crewmembers, namely Bob Makinney and Ronnie Golmon, to rig up the stabbing board.

18. Prior to, as well as during the rigging operation and at the time of the accident, no Helmerich & Payne employees or representatives were present in the derrick, nor had they been present in the derrick during the rigging up of the equipment to be utilized in the stabbing of the casing. All of those operations were conducted solely and exclusively by the casing crew employees of Weatherford-Lamb, Inc.

19. The casing operation, including the rigging of the stabbing board, was not the responsibility of Helmerich & Payne International Drilling Company, nor were any Helmerich & Payne employees engaged in the rigging of the stabbing board on the date in question.

20. The only individuals engaged in the rigging of the stabbing board were employees of Weatherford-Lamb, Inc.

21. The stabbing board and its means of securement were exclusively and solely controlled by Weatherford-Lamb, Inc. at all times on the date of the plaintiff's accident.

22. At the time of the plaintiff's accident on November 5, 1979, the stabbing board had been tied off approximately forty-seven (47) feet up in the derrick by two Weatherford-Lamb crewmembers, namely Bob Makinney and Ronnie Golmon, utilizing a cable with a length of chain at either end, attached to the stabbing board. The cable and chain were provided by Weatherford-Lamb, Inc., for the casing operation, specifically, for rigging the stabbing board, and were owned by Weatherford-Lamb, Inc.

23. The next step of the rigging procedure was to secure the stabbing board to the derrick, utilizing four aluminum braces or "legs" which were also owned and supplied by Weatherford-Lamb, Inc. Two of the legs were to be attached at the top, and two at the bottom, of the board.

24. The purpose of the legs was to stabilize the stabbing board over the well, and until they were attached, the stabbing board would swing in and out.

25. At the time of the plaintiff's accident, the stabbing board had been tied off in the derrick, but had not been secured with the attachment of the legs. Therefore, at the time of the plaintiff's accident, the stabbing board was not secured in the derrick in the final fashion in which it would be utilized in the subsequent, upcoming casing operations.

26. At the time of the plaintiff's accident, the procedure of rigging the stabbing board to the derrick had not been completed, because the four braces had not yet been installed or put in place.

27. The plaintiff's accident occurred when he stepped onto the stabbing board with one foot and reached down to pick up one of the legs. As he did so, the stabbing board fell several feet downward, causing the plaintiff to lose his balance and fall to the rig floor.

28. The stabbing board fell because the chain attached to the left side of the board, which was utilized to tie that side of the board to the derrick, and which was a piece

of equipment owned by Weatherford-Lamb, Inc. and dispatched by it to the rig for the job, slipped.

29. It was Weatherford-Lamb, Inc.'s responsibility to furnish a safety chain to hold the stabbing board in place in the derrick during the rigging operation.

30. No safety chain was utilized during the rigging operation, because a safety chain was not included in the equipment provided by Weatherford-Lamb, Inc.

31. Honore Muntz, the Weatherford-Lamb crewpusher, made the decision to proceed with the rigging operation approximately forty-seven (47) feet above the drill floor despite the absence of the safety chain.

32. Weatherford-Lamb, Inc. was responsible for providing its employees with safety equipment and for seeing that it was utilized by them.

33. At the time of the accident, the plaintiff was approximately forty-seven (47) feet up in the derrick, and had not tied off his safety belt to the derrick.

34. The plaintiff was not instructed by his supervisor, Mr. Muntz, to utilize the safety belt while rigging the stabbing board, approximately forty-seven (47) feet above the rig floor.

35. Weatherford-Lamb, Inc., provided no safety equipment to prevent the plaintiff from falling from the derrick on the date of the accident.

36. On the date of the plaintiff's accident, Helmerich & Payne International Drilling Company was not responsible for supervising the rigging of the stabbing board.

37. On the date of the plaintiff's accident, Helmerich & Payne International Drilling Company was not responsible for giving any instructions, directions, or supervision to the Weatherford-Lamb crewpusher.

38. On the date of the plaintiff's accident, the Helmerich & Payne toolpusher, Gerald Brown, was not responsible for assuring that the Weatherford-Lamb casing operation, including the rigging of the stabbing board, was carried out in a safe manner.

39. On the date of the plaintiff's accident, it was the responsibility of the Weatherford-Lamb casing crewpusher to correct any unsafe casing procedure.

40. On the date of the plaintiff's accident, Helmerich & Payne was not responsible for assuring that the Weatherford-Lamb equipment to be utilized in the casing operation, including the stabbing board, was safe for use.

41. It was Weatherford-Lamb, Inc.'s responsibility to inspect its casing equipment prior to the use of the equipment on the rig.

42. The type of Weatherford-Lamb casing tools and equipment to be utilized on Helmerich & Payne Rig Number 37 was determined jointly by a representative of Shell Oil Company and Weatherford-Lamb, Inc.

43. The type of Weatherford-Lamb tools and equipment to be utilized on Helmerich & Payne Rig Number 37 was not determined by any representative of Helmerich & Payne International Drilling Company.

44. On the date of the plaintiff's accident, no Helmerich & Payne personnel utilized the Weatherford-Lamb casing equipment, during the rigging of the stabbing board, nor would the Helmerich & Payne personnel have utilized the Weatherford-Lamb equipment during the casing operation.

45. On the date of the plaintiff's accident, Helmerich & Payne International Drilling Company was not in the casing business.

46. On the date of the plaintiff's accident, Helmerich & Payne International Drilling Company did not own any casing tools.

47. On the date of the plaintiff's accident, Weatherford-Lamb, Inc., was a specialist in casing operations.

48. The stabbing board in question would have been removed from the derrick when the Weatherford-Lamb casing opera-

tions had been completed in one (1) or two (2) days.

49. On the date of the plaintiff's accident, Weatherford-Lamb, Inc. was directly in charge of rigging the casing equipment and running the casing operation.

50. On the date of the plaintiff's accident, the specific method by which the stabbing board was to be secured in the derrick was determined by the Weatherford-Lamb casing pusher and his crew, who were also Weatherford-Lamb employees.

The parties further stipulated that there are no material facts at issue. Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Union Planters Nat. Leasing v. Woods,* 687 F.2d 117, 119 (5th Cir. 1982). Summary judgment is proper, and is controlled in this diversity action by Louisiana law. Plaintiff seeks to hold defendant liable under theories of strict liability and negligence. A building owner is strictly liable for the damage occasioned by its ruin, when it is caused by a neglect to repair or is the result of a vice in its original construction. La.Civ.Code Art. 2322. A fixed drilling platform is a "building" within the meaning of Article 2322 and "appurtenances" may also be included within that term. *Olsen v. Shell Oil Co.,* 365 So.2d 1285 (La. 1978). Plaintiff contends that the stabbing board was attached to the rig at the time of plaintiff's fall, and was thus an "appurtenance" for which defendant is responsible as owner of the rig.

To impose liability under Article 2322 the following requirements must be met: (1) there must be a building; (2) the defendant must be its owner; and (3) there must be a "ruin" caused by a vice in construction or a neglect to repair. *Walker v. Tenneco Oil Co.,* 615 F.2d 1121 (5th Cir. 1980). There is no doubt that the land rig constitutes a "building" under this article. However, the stabbing board in this case does not constitute a necessary "appurte-

nance" by attachment. For an object to qualify as an appurtenance, it must be, with some degree of permanence, an integral part of the building. *Id.* The stabbing board in question does not possess these characteristics. The board is a single unit which includes a track upon which the board can be raised or lowered during the operation. It is rigged to the derrick with cables and chains, and secured by four aluminum braces which are not an integral part of the derrick. The entire operation in which the board was to be utilized was intended to last one to two days. Thus, we find that the board was not an appurtenance incorporated into the structure of the rig so as to become an immovable for which defendant could be held strictly liable. See *Olsen,* supra at 1291.

Plaintiff also contends that defendant is liable under a negligence standard, arguing that the stabbing board was in defendant's custody. One is liable in Louisiana for damages caused by "things which we have in our custody." La.Civ. Code Art. 2317. Custody in this article means supervision and control. *Smith v. Chemical Construction Corporation,* 215 So.2d 530 (La.App. 1st Cir.1968); *Wilcox v. American Oil Company,* 215 So.2d 402 (La. App. 2d Cir.1968). It is undisputed that plaintiffs' employer, Weatherford-Lamb, Inc. contracted with Shell Oil Company to furnish a casing crew and equipment for a casing operation aboard defendant's drilling rig. Every piece of equipment to be utilized in the casing operations, including the stabbing board and its means of securement to the derrick, was owned by Weatherford-Lamb, Inc., and was dispatched by Weatherford-Lamb to the rig site. During the rigging operation and at the time of the accident, none of defendant's employees or representatives were present on the derrick. All of those operations were conducted solely by the employees of Weatherford-Lamb, Inc. Weatherford-Lamb, Inc.'s employees clearly exercised full supervision and control over the casing operation. Accordingly, defendant cannot be held liable for plaintiff's injuries and its motion for sum-

mary judgment, dismissing plaintiff's claims against it is hereby GRANTED.