**Stanley E. BOGGS, Jr.**

v.

**ATLANTIC RICHFIELD COMPANY.**

Civ. A. No. 88–5543.

United States District Court,
E.D. Louisiana.

Aug. 23, 1989.

James A. Wysocki, Heisler & Wysocki, New Orleans, La., for Stanley E. Boggs, Jr.

Christovich & Kearney, R.K. Christovich, New Orleans, La., for Atlantic Richfield Co. (ARCO).

## ORDER AND REASONS

ARCENEAUX, District Judge.

This matter comes before the Court on motion for summary judgment filed by Atlantic Richfield Company ("Arco"). Having thoroughly reviewed the record, the memoranda of counsel and the law, the Court has determined that summary judg-

ment is appropriate for the reasons set forth hereinafter.

The plaintiff, Stanley E. Boggs ("Boggs"), seeks recovery for personal injuries allegedly sustained on February 8, 1988, while working for Helmerich & Payne ("H & P") on its H & P Rig 100, located on Arco's Ship Shoal Block 332 "A" fixed platform on the Outer Continental Shelf off the coast of Louisiana. Boggs claims to have tripped on a pollution containment rim, comprised of a piece of angle iron which had been welded to the floor of the H & P rig. Arco is sued as owner of the platform, for its alleged neglect in failing to keep the platform in repair, under La.Civ.Code arts. 670 [1] and 2322, and for the inherent vice allegedly posed by this pollution rim, under La.Civ.Code art. 2322.

It is undisputed that the pollution rim was required under applicable federal regulations, that it was permanently attached to the H & R rig, and that the plaintiff was aware of its presence at the time of the alleged accident. It is also undisputed that the rig itself has been moved to three different platforms since 1982, and moved many more times to various locations on these platforms. The rig was never fastened bolted, welded, braced, clamped or fastened to the platform, and its removal will cause no damage to the platform, except for possible abrasion to the deck thereof. Arco relies on these facts to argue that the H & R rig was not an appurtenance of the platform under Louisiana law, and that Arco cannot otherwise be held liable for the condition created by the pollution rim.

The plaintiff relies on the Louisiana Supreme Court's pronouncement in *Olsen v. Shell Oil Co.*, 365 So.2d 1285 (La.1978), that a modular living unit attached to a drilling platform was part of the platform for purposes of Article 2322. However, it has been established that the H & R rig was not attached to the platform here in any manner, and was, in fact, frequently moved. This lack of attachment fails to qualify the rig as a part of the platform not only under the jurisprudential rule set forth in *Olsen, supra*, but under La.Civ. Code art. 466 as well.

Judge Tate's careful discourse in *Olsen, supra*, begins with a determination of what constitutes a "building" for purposes of Article 2322 liability. In adhering to the principles of civilian interpretation, the subsequent analysis is premised on the Louisiana Civil Code, and with specific reference to La.Civ.Code arts. 463 and 464: "In the context of the Louisiana Civil Code, a 'building' is a type of permanent construction that would be classified as an immovable." *Olsen, supra* at 1290. A fixed platform is found to be a building under the Code and, by reference to jurisprudential rules relating to Article 2322 liability, its necessary appurtenances and movables made immovable by attachment are also included in that term. *Olsen, supra* at 1290–1291.

Recent jurisprudence interpreting *Olsen, supra* holds that in order to impose liability under Article 2322, the plaintiff must initially show that the rig was, with some degree of permanence, an integral part of the platform. *Walker v. Tenneco Oil Co.*, 615 F.2d 1121 (5th Cir.1980). In determining a thing's qualification as an appurtenance, the Court should consider how securely the addition is attached to the building and the degree of permanence the parties intend for the addition. *Harrison v. Exxon Corp.*, 824 F.2d 444 (5th Cir.1987); *Steele v. Helmerich & Payne International Drilling Co.*, 738 F.2d 703 (5th Cir.1984). In addition, the permanence of the attachment under Article 466 should also be considered. *Steele, supra.*

---

1. Since 1978, La.Civ.Code art. 670 has concerned encroaching buildings and predial servitudes. The Court will assume that the plaintiff's claim is based on La.Civ.Code art. 660, which provides:

   The owner is bound to keep his buildings in repair so that neither their fall nor that of any part of their materials may cause damage to a

neighbor or to a passer-by. He is answerable for damages caused by his neglect to do so.

In this regard, the plaintiff has articulated no claim which does not rely on the rig being deemed part of the Arco platform, and apparently concedes that all claims fall if the rig is not found to be part of the Arco platform for Article 2322 purposes.

The significance of the return to the Code suggested by this Fifth Circuit jurisprudence was noted by this Court in *Sistrunk v. Conoco, Inc.*, 693 F.Supp. 498 (E.D.La.1988), wherein a monkey board on a rig was found not to be part of an offshore platform for purposes of Article 2322 liability. In so holding, the Court discussed the impact of the revisions to the Civil Code articles concerning immovables contained in 1978 La. Acts 728, § 1 [2], and concluded that revised Article 466 now provides the sole criteria for classification as an appurtenance for purposes of Article 2322 liability under Louisiana law.

Under the revisions, the categories of immovables by nature, immovables by destination and immovables by their object have been eliminated from the Code; immovables are now classified only as corporeal or incorporeal. *McNamara v. Electrode Corp.*, 418 So.2d 652 (La.App.1982), *cert. denied* 420 So.2d 986 (La.1982); Expose' des Motifs of Act 728, 1978 La. Acts; Student Symposium, "The Work Of The Louisiana Legislature For The 1978 Regular Session," 39 *La.L.Rev.* 101, 166 (1978).

The discussion in *Olsen, supra*, of Article 2322 liability for the defective attachments to the platform did not concern the issue of attachment, but involved instead, the issue of ownership, necessarily implicated by the unity of ownership requirement present in the only other reference to buildings in the relevant codal provisions, which concerned those things deemed immovable by their nature.[3] Judge Tate perceived the non-delegability of the owner's duty under Article 2322 to be the true issue, and refused to apply the Code's requirement of unity of ownership for such immovables. At a time when the Code itself did not provide guidance as to what constituted a part of a building or permanent attachment, Judge Tate looked to jurisprudence under Article 2322 in concluding that "[b]ecause the appurtenant living unit was *part* of the building for purposes of Article 2322, cf. also La.C.C. art. 508 (1870), it is immaterial whether it is technically immobilized or not under Article 467 (1972) ..." *Olsen, supra* at 1292 (emphasis added).[4]

Having created the single category of corporeal immovables, the 1978 revisions set forth, for the first time, definitions of the component parts of a building and the related concept of permanent attachment:

Art. 465. Things incorporated into an immovable. Things incorporated into a tract of land, a building, or other construction, so as to become an integral part of it, such as building materials, are its component parts.

Art. 466. Component parts of buildings or other constructions. Things permanently attached to a building or other construction, such as plumbing, heating, cooling, electrical or other installations, are its component parts.

Things are considered permanently attached if they cannot be removed without substantial damage to themselves or to the immovable to which they are attached.

Former La.Civ.Code art. 469 provided:

The owner is supposed to have attached to his tenement or building forever such movables as are affixed to the same with plaster, or mortar, or such as can not be taken off without being broken or injured, or without breaking or injuring the part of the building to which they are attached.

---

2. It is generally conceded that these revisions are substantive in nature. *United States Environmental Protection Agency v. New Orleans Public Service, Inc.*, 826 F.2d 361 (5th Cir.1987); *Equibank v. United States Internal Revenue Service*, 749 F.2d 1176 (5th Cir.1985).

3. Former La.Civ.Code art. 467 provided:

Wire screens, water pipes, gas pipes, sewerage pipes, heating pipes, radiators, electric wires, electric and gas lighting fixtures, bathtubs, lavatories, closets, sinks, gasplants, meters and electric light plants, heating plants and furnaces, when actually connected with or attached to the building by the *owner* for the use or convenience of the building are immovable by their nature. (Emphasis added).

4. The Court notes that Article 508 was the subject of revisions under 1979 La.Acts 180, § 1, and that revised La.Civ.Code arts. 491–498 refer specifically to those things incorporated or attached to the immovable of another so as to become component parts under Articles 465 and 466.

Hence, under the new provisions, things incorporated into a building so as to become an integral part of it, and things permanently attached to a building are its component parts. See: *Harrison, supra; Steele, supra; Walker, supra.* Both articles include the jurisprudential concept set forth in *Olsen, supra,* that unity of ownership of the component part and the building is not required, thereby resolving the conflict perceived by Judge Tate between the intent of Article 2322 and the former articles on immovables by nature.

The analysis set forth in *Olsen, supra* was launched upon the premise that a building is that which would be classified as an immovable under the Code. "Immovability is a legal concept and not merely an inherent quality of a thing. Whether a thing is classified as an immovable depends upon whether the legislature has accorded to that thing the preferred status of immovability." *P.H.A.C. Services v. Seaways International, Inc.* 403 So.2d 1199, 1203 (La.1981). This Court concludes that these new provisions defining the very parts of that immovable known as a building in terms of permanent attachment render the prior jurisprudentially-developed concept of "appurtenance" obsolete.[5] The Court cannot ignore the revision to Article 466 which now requires only that a component part of a building be "permanently attached," and for the first time, specifically defines that which is "permanently attached." Because it is undisputed that the H & P rig at issue here could be and was removed without substantial damage to itself or to the platform to which it was attached, it cannot be deemed part of the building owned by Arco for purposes of Article 2322 liability.[6]

Accordingly,

IT IS ORDERED that the motion for summary judgment filed by Atlantic Richfield Company is hereby GRANTED. Judgment shall be entered accordingly.

---

5. As this Court noted in *Sistrunk, supra:*

In Louisiana, as in other civil law jurisdictions, legislation is superior to any other source of law. Article 1 of the Louisiana Civil Code of 1870 [now Art. 2], declaring that legislation is a formal expression of legislative will, has been interpreted to establish the supremacy of legislation and to exclude judicial legislation. It is only in cases not covered by legislation that a lawyer or judge may look for solutions elsewhere.

La.Civ.Code art. 1, Comment (c).

6. The Court notes that at least two Louisiana appellate courts have analyzed the issue presented herein with primary reference to Article 466. *White v. Gulf States Utilities Co.,* 525 So.2d 145 (La.App. 3d Cir.1988); *Simmons v. Board of Commissioners for the Port of New Orleans,* 442 So.2d 836 (La.App. 4th Cir.1983). At the same time, the court in *Heater v. Texas Gas & Exploration Corp.,* 466 So.2d 504 (La.App. 3d Cir. 1985) failed to recognize that the applicability of the revisions is triggered by the determination of when the operative facts leading to the litigation occurred. *P.H.A.C. Services, Inc., supra.*